UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80668-Civ-SCOLA

JAN VAN VECHTEN, et al.,

    Plaintiffs,

vs.

BRIAN ELENSON, et al.,

    Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS

THIS MATTER is before the Court upon the Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 33], filed by Defendant Brian Elenson ("Elenson"), and the Motions to Dismiss for Failure to State a Claim [ECF Nos. 8, 32], filed by Defendants Atlas Media Corporation ("Atlas Media"), Bruce David Klein ("Klein"), Time Warner Inc. ("Time Warner"), Turner Broadcasting System, Inc. ("Turner Broadcasting"), and Courtroom Television Network, LLC ("TruTV") (together, the "Media Defendants) and by Defendant 2MuchStuff4Me, Inc. ("2MuchStuff4Me"). For the reasons set forth below, Elenson's Motion is denied, the Media Defendants' Motion is granted in part, and 2MuchStuff4Me's Motion is granted. Plaintiffs Jay and Lowell Van Vechten (the "Van Vechtens") shall be given leave to file an Amended Complaint consistent with this Order.

### Factual Allegations

This lawsuit arises from an estate sale that went awry when Elenson and his company, 2MuchStuff4Me, allegedly stole countless valuable objects from the Van Vetchens' home in Palm Beach County, Florida. Atlas Media is a television reality show production provider for numerous programs and networks, including TruTV. Compl. ¶ 12. In late 2010, the Van Vechtens contacted Atlas Media after learning that it was in search of a Florida home for an estate sale to be filmed for a reality television program on TruTV. *Id.* ¶ 10. The Van Vechtens agreed to allow Atlas Media to bring in a production crew to film the estate sale, which would be conducted by Elenson and his company, 2MuchStuff4Me. *Id.* ¶ 13. Atlas Media agreed to handle all aspects of the sale, including

promotion, advertising, set up, take down, selling, and clean up. *Id.* ¶ 11. The Van Vechtens were to be paid 70% of the proceeds from the estate sale, and were promised a minimum of $250,000 by Elenson. *Id.* ¶¶ 11, 16.

From February 7, 2011 to February 15, 2011, Elenson, his staff, and the Atlas Media crew "took over" the Van Vechten home for the estate sale. *Id.* ¶ 15. The Van Vechtens put up for auction, and turned over to Elenson, property – including jewelry and fine art – valued at $400,000. *Id.* ¶ 17. The Van Vetchens were sent to a hotel during the filming and were not permitted to attend the sale, enter their house, or otherwise participate other than to secure personal belongings and tag any items they did not want sold. *Id.* ¶ 14. Elenson did not maintain any records or receipts of the sales transactions, and the Van Vechtens were presented with only $53,318 in proceeds from the auction. *Id.* ¶ 18.

After the filming was complete, the Van Vechtens found many valuable items from their home missing and unaccounted for. *Id.* ¶ 21. In the days that followed, the Van Vechtens also learned from "dozens of people" of various irregularities observed during the auction – namely, that nothing was priced at the sale, that Elenson had questionable knowledge of the antiques, art, and jewelry being sold, and that security was lax or absent during the filming. *Id.* ¶¶ 19, 20. On the day the program was scheduled to air, May 17, 2011, the Van Vechtens learned from an "anonymous call" that Elenson had stolen many of their belongings and placed them in a warehouse. *Id.* ¶ 22. When the Van Vechtens watched the show, they saw numerous objects sold for a fraction of their value and were "stunned" to see several of the sales were staged for television and that the items actually remained in their home. *Id.* ¶ 23. At the program's end, Elenson announced into the camera that the auction had generated $192,628 in sales. *Id.* ¶ 24. Yet, the Van Vechtens were allegedly given only $53,318, as opposed to the 70% of total sales they were promised. *Id.*

The Complaint sounds in seven counts. Counts I and II allege conversion and civil theft against Elenson; and Counts III, IV, V, VI, and VII allege negligent selection of Elenson by Atlas Media, Klein, Time Warner, Turner Broadcasting, and TruTV. While Elenson's company, 2MuchStuff4Me, is named as a Defendant in the Complaint, no causes of action are asserted against it.

Elenson, a citizen of New York, moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), while the Media Defendants move to dismiss for failure to state a claim under Rule 12(b)(6). 2MuchStuff4Me moves to dismiss under Rule 12(b)(6) on the grounds that it is not named in any of the counts in the Complaint.

**Legal Standards**

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. "A court must dismiss an action against a defendant over which it has no personal jurisdiction." *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011) (Hernandez Covington, J.). To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person. *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). If the defendant sustains its burden of challenging the plaintiff's allegations through affidavits or other competent evidence, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony, or other evidence of his own. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The plaintiff must do more than "merely reiterate the factual allegations in the complaint." *Id.* (quoting *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991) (Kovachevich, J.)). Where the evidence conflicts, however, the district court must construe all reasonable inferences in favor of the plaintiff. *See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 810 (11th Cir. 2010). "If such inferences are sufficient to defeat a motion for judgment as a matter of law, the court must rule for the plaintiff, finding that jurisdiction exists." *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today*, 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.*, 810 F. Supp. 2d at 1324; *Sculptchair, Inc. v. Century Arts*, 94 F.3d 623, 626 (11th Cir. 1996).

### B.  Motion to Dismiss for Failure to State a Claim

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal.  *Id.*

In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).  "This is a stricter standard than the Supreme Court described in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which held that a complaint should not be dismissed for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Mukamal v. Bakes*, 378 F. App'x 890, 896 (11th Cir. 2010).

## Legal Analysis

When called upon to decide both jurisdictional and substantive challenges to the plaintiff's complaint, "district courts should, as an initial matter, address any personal jurisdiction arguments raised by defendants."  *See Mother Doe I v. Al Maktoum*, 632 F. Supp. 2d 1130, 1134 (S.D. Fla. 2007) (Altonaga, J.); *see also Madara v. Hall*, 916 F.2d 1510, 1513-14 (11th Cir. 1990).  Accordingly, the Court will first address Elenson's challenge to personal jurisdiction, followed by the other Defendants' substantive arguments for dismissal.

### A. Personal Jurisdiction Over Elenson

The Court finds that Elenson is subject to personal jurisdiction here. Florida's long-arm statute provides for specific personal jurisdiction over a non-resident defendant as follows:

> Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> * * *
>
> (b) Committing a tortious act within this state.

*See* Fla. Stat. § 48.193(1)(b). In plain English, this provision permits the exercise of specific personal jurisdiction over a defendant "for any cause of action arising from" his tortious conduct committed in Florida. *See id.* Elenson argues that this provision does not apply because the allegations of the Complaint do not concern his personal conduct, but rather his conduct as an agent of 2MuchStuff4Me. *See* Elenson Mot. at 5-6. According to Elenson, agents who engage in business on behalf of their principals are not acting personally for purposes of the Florida long-arm statute. *See id.* (citing *Excel Handbag Co. v. Edison Bros. Stores*, 428 So. 2d 348, 350 (Fla. 3d DCA 1983)).

This argument fails to persuade. The Complaint clearly paints Elenson as a tortfeasor personally. Indeed, the Van Vetchens specifically allege that **Elenson** "along with his company" conducted the estate sale and that *he* converted and stole their belongings. Compl. ¶¶ 13, 15, 17, 22, 24, 25-28, 29-41. The Complaint does not say that he did these acts as an agent of 2MuchStuff4Me. Accordingly, the Court finds that the Van Vechtens have pled a prima facie case of personal jurisdiction over Elenson, which can only be overcome through contrary affidavits or other evidence. *See, e.g.*, *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999).

While Elenson has submitted an affidavit, it does not controvert the allegations that he committed a tortious act in Florida. The bulk of the affidavit is devoted to disclaiming any business or personal contacts with Florida, *see* Elenson Aff. ¶¶ 2-10, but that does not defeat personal jurisdiction where it is founded on tortious conduct. *See Edelstein v. Marlene D'Arcy, Inc.*, 961 So. 2d 368, 371 (Fla. 4th DCA 2007) (affidavits did not "dispute the complaint's allegations that [defendants] committed tortious acts in Florida," where the affidavits only addressed whether defendants "do business in Florida or have any Florida contacts"). Further, Elenson's averment that he has "never committed a tort, in whole or in part, within the state of Florida," *see* Elenson Aff. ¶ 8, is a mere legal conclusion that does not defeat jurisdiction. *See, e.g.*, *Acquadro v. Bergeron*, 851

So. 2d 665, 672 (Fla. 2003) (defendant's affidavit stating that "I did not make defamatory statements about [plaintiff]" amounted to mere "legal conclusion that the content of [defendant's] statement was not defamatory," and was "insufficient to shift the burden to [plaintiff] to demonstrate that jurisdiction was proper").

Nor does it matter that, according to the affidavit, the Van Vechtens contracted only with 2MuchStuff4Me and that Elenson conducted the estate sale solely in his capacity as an officer of 2MuchStuff4Me. *See* Elenson Aff. ¶¶ 12, 13. As the Florida Supreme Court recently made clear in *Kitrose v. Hurt*, 85 So. 3d 1084, 1089-90 (Fla. 2012):

> Our precedent and the statutory language of [Florida's long-arm statute] have never suggested that an actor who is *present in Florida* and commits tortious acts in-state is excepted from personal jurisdiction [merely] because he or she works on behalf of a corporation. . . . Where an individual, nonresident defendant commits negligent acts in Florida, whether on behalf of a corporate employer or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over the individual defendant. Jurisdiction properly applies to "any person" who commits torts "within this state."

The court explained that the so-called "corporate shield" doctrine is triggered only where the defendant is a nonresident corporate officer or employee who works solely outside of Florida, commits no physical acts in Florida, and has no personal connection with Florida. *See id.* at 1089. In such a case, personal jurisdiction will not lie over the defendant for acts undertaken in his capacity as agent. *See id.*

But that is not the situation presented here, because here Elenson came to Florida and allegedly stole from the Van Vechtens in the course of conducting the estate sale in Palm Beach County. Compl. ¶¶ 15, 21, 22, 25-28, 29-41. To refute the Complaint's allegations, Elenson would have to aver that he never entered the state of Florida and that any tortious conduct felt here was done from afar solely in his capacity as an agent of 2MuchStuff4Me. His affidavit makes no such claim, however. In fact, Elenson admits that he physically went to the Van Vechtens home in Florida to perform the estate sale. *See* Elenson Aff. ¶ 13. That he purportedly did so solely as an officer of 2MuchStuff4Me is of no moment. "The explicit language of section 48.193(1)(b) clearly establishes that if one is personally present in Florida and commits a tort in Florida, one is subject to the personal jurisdiction of Florida courts," and "whether [the defendant acts] on behalf of a corporate employer

or not, the corporate shield doctrine does not operate as a bar to personal jurisdiction in Florida over [him]."[1] *See Kitrose*, 85 So. 3d at 1089-90.

Simply put, Elenson has failed to controvert the Complaint's allegations subjecting him to personal jurisdiction. *See id.* at 1090 ("plaintiffs allege that [the corporation's] employees acted tortiously within Florida, and the [corporate] employees do not refute these allegations"). As such, the Van Vechtens were not required to come forward with countervailing affidavits or evidence of their own.[2] *See, e.g.*, *Whitney Info. Network, Inc. v. Xcentric Venture, LLC*, 199 F. App'x 738, 742-43 (11th Cir. 2006) (defendant's affidavit shifts the burden back to plaintiff to support jurisdictional allegations with evidence "only when the defendant's affidavit is legally sufficient to effect the shift"); *Acquadro*, 851 So. 2d at 672 (where defendant's declaration did not sufficiently counter jurisdictional allegations, "the burden remained on her" and did not shift back to the plaintiff).

The only other argument that Elenson offers is that "a plaintiff is not permitted to bootstrap jurisdiction over a nonresident defendant simply by taking an ordinary breach of contract claim against a corporation and inappropriately couching it as counts of conversion and/or civil theft by a corporate officer." *See* Elenson Mot. at 6. According to Elenson, the conversion and civil theft counts fail to state a claim because they really are just seeking money allegedly due under the parties' contract.

This argument is mistaken. While Elenson states in his affidavit that the Van Vechtens contracted with 2MuchStuff4Me and not him personally, *see* Elenson Aff. ¶ 12, and while the Van Vechtens allege that they were not paid the promised 70% of auction proceeds, *see* Compl. ¶ 24, it is

---

[1] In light of *Kitrose*, Elenson's reliance on *Excel Handbag v. Edison Bros. Stores*, 428 So. 2d 348, 350 (Fla. 3d DCA 1983), is misplaced. To the extent *Excel Handbag*, a 1983 decision from the Third District Court of Appeal, conflicts with *Kitrose*, a 2012 decision from the Florida Supreme Court, the latter obviously prevails and must be followed by this Court. *See Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) (decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by Florida Supreme Court). In his reply, however, Elenson clarifies that he intended to cite *Excel Handbag* only for the proposition that "engaging in 'business' by an individual employee on behalf of a corporation does not subject the individual employee to jurisdiction for conducting the 'business' in Florida." *See* Elenson Reply at 5 n.1. That proposition is fine as far as it goes, but as should be clear by now, this case does not solely concern a business deal gone sour. Instead, it involves allegations that Elenson engaged in intentional tortious conduct.

[2] Elenson's failure to include any specific, relevant factual denials in his affidavit separates this case from the Eleventh Circuit's decision in *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1277 (11th Cir. 2009), upon which he relies. Elenson cites *United Technologies* for the proposition that statements in an affidavit will only infrequently be deemed too conclusory to shift the burden back to the plaintiff to submit further evidence in support of jurisdiction. *See* Elenson Reply at 4-5. While this Court does not agree with Elenson's reading of that case, it is quite clear his affidavit is nothing like the one offered by the defendant there. That defendant offered specific factual denials of the allegations underlying the alleged tortious conduct, *see United Techs. Corp.*, 556 F.3d at 1277, whereas here Elenson does not. He merely states that he committed no tort in Florida, *see* Elenson Aff. ¶ 8, without denying in any way that he came to Florida or that he stole from the Van Vetchens. That will not do.

quite plain that the conversion and civil theft counts do not rest solely on a contractual non-payment theory. Rather, those counts also rest on the allegations that Elenson himself stole property "in the form of jewelry, works of art, and countless other objects." Compl. ¶¶ 21, 22, 31. Such allegations adequately distinguish this case from *Bedford Trucking Co. v. Zagar*, 243 So. 2d 646, 648 (Fla. 4th DCA 1971), and similar decisions holding that conversion and theft claims cannot be maintained if based solely on the failure to satisfy a general monetary indebtedness under a contract. *Cf. Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1098 (S.D. Fla. 1992) (Moreno, J.) ("where a contractual relationship exists, the alleged loss which results from the theft, must be separate and distinct from any loss alleged to have resulted from the breach of contract"). Thus, this is not an ordinary contract case masquerading as a tort case, so as to change the personal jurisdictional calculus under Florida's long-arm statute.

Having found Florida's long-arm statute satisfied, the only question remaining is whether the exercise of jurisdiction over Elenson comports with the due process requirements of the Fourteenth Amendment. *See Posner*, 178 F.3d at 1220; *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. 1996). There is no due process problem so long as "minimum contacts" exist between Elenson and Florida and exercising jurisdiction over him does not offend "traditional notions of fair play and substantial justice." *See Posner*, 178 F.3d at 1220.

In order for there to be sufficient "minimum contacts," three criteria must be met. *Sculptchair*, 94 F.3d at 631. First, Elenson's contacts with Florida must be related to the Van Vechtens' claims or have given rise to them. *Id.* Second, the contacts must involve some purposeful availment of the privilege of doing business in Florida, thereby invoking the benefits and protections of its laws. *Id.* Finally, Elenson's contacts with Florida must be such that he could reasonably anticipate being haled into court here. *Id.*

On the record before the Court, each of these requirements is satisfied. First, Elenson's contacts with Florida form the basis for, and directly relate to, the Van Vechtens' conversion and civil theft claims. Indeed, these claims arise from Elenson's work during the estate sale at the Van Vechtens home in Florida and his alleged theft of their property while there. Second, Elenson purposefully availed himself of the benefits of doing business in Florida. Indeed, he came to Florida to conduct, and film, an estate sale at the Van Vechtens home as part of his reality television show. As such, Elenson's contacts clearly did not reach Florida haphazardly, by some attenuation or accident beyond his anticipation or control. *See Ben M. Hogan Co., Inc. v. QDA Inv. Corp.*, 570 So. 2d 1349, 1351 (Fla. 3d DCA 1990). Third, it was imminently foreseeable that Elenson might be

haled into Florida court if he stole property belonging to Florida residents, from their Florida home, while he was physically in Florida. *See S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997). Thus, the Court finds that Elenson has sufficient "minimum contacts" with Florida. His affidavit's averment to the contrary – "I purposely have not established minimum contacts with Florida," *see* Elenson Aff. ¶ 15 – is a mere legal conclusion that is, once again, simply insufficient to defeat jurisdiction. *See Acquadro*, 851 So. 2d at 672; *Carrillo*, 115 F.3d at 1547.

The same holds true of Elenson's claim that "[t]he Court's exercise of jurisdiction over me will offend traditional notions of fair play and substantial justice." *See* Elenson Aff. ¶ 15. That statement is meaningless here. *See Acquadro*, 851 So. 2d at 672; *Carrillo*, 115 F.3d at 1547. Contrary to Elenson's claim, the Court in fact finds that the exercise of personal jurisdiction over him comports with traditional notions of "fair play and substantial justice." *See Oldfield*, 558 F.3d at 1221. In reaching this conclusion, the Court has considered the burden on Elenson of defending suit in Florida; Florida's interest in adjudicating the suit; the Van Vechtens' interest in obtaining effective relief; and the interests of the interstate judicial system in using resources efficiently.

As this Court has said before, "generalized inconvenience of litigating in a foreign forum is typically not sufficient to establish that the exercise of jurisdiction is constitutionally unreasonable." *H.E.R.O., Inc. v. Self*, 2012 WL 1802431, at *6 (S.D. Fla. May 17, 2012) (Scola, J.) (quoting *Savage Universal Corp. v. Grazier Const., Inc.*, 2004 WL 1824102, at *11 (S.D.N.Y. Aug. 13, 2004)). While Elenson may incur travel costs to Florida, this fact deserves little weight because modern conveniences have mostly ameliorated the burdens of defending suit away from home. *See Sculptchair*, 94 F.3d at 632 ("modern methods of transportation and communication have significantly ameliorated [the defendant's] burden" of defending suit elsewhere). Indeed, the fact that Elenson apparently had little trouble coming here to perform the estate sale suggests that travel in the course of the litigation will not prove too burdensome. *See Except'l Urgent Care Ctr. I, Inc. v. Protomed Med. Mgmt. Corp.*, 2009 WL 1370818, at *10 (M.D. Fla. May 14, 2009) (Hodges, J.) ("The fact that [defendant] was able to travel to Florida to assist with training and correct the alleged software defects also demonstrates that access to Florida is not overly burdensome.").

Moreover, whatever mild inconveniences Elenson may experience in terms of occasional travel to Florida are also heavily outweighed by other factors. Florida clearly has a strong interest in affording a forum for relief to Florida citizens, such as the Van Vechtens, who were allegedly injured in Florida by a defendant visiting Florida. *See id.* In addition, Elenson has made no showing that the interests of judicial and litigant economy fairly require adjudication of this dispute elsewhere. Taken

together, these considerations show that asserting personal jurisdiction over Elenson comports with constitutional notions of "fair play and substantial justice."  *See Oldfield*, 558 F.3d at 1221.

Thus, in sum, because the requirements of Florida's long-arm statute and due process are satisfied, the Court may exercise personal jurisdiction over Elenson.

### B.  Negligent Selection Claim Against the Media Defendants

The Court finds that the Complaint, on the whole, adequately pleads negligent selection against Atlas Media, but not against the other Media Defendants.  In seeking dismissal, the Media Defendants initially point out that the Complaint fails to allege that Klein, Time Warner, or Turner Broadcasting had any involvement in the selection of Elenson.  *See* Media Def. Mot. at 8-9; Reply at 6.  The Court agrees that the allegations against Klein, Time Warner, and Turner Broadcasting are insufficient.  Indeed, the Complaint contains no factual allegations about these Media Defendants other than facts about their incorporation and places of business, and their ties to Florida.  Compl. ¶¶ 4, 7, 8, 9.  Importantly, the Complaint does not allege that they had any role in the estate sale or in selecting Elenson to carry it out.  Obviously, there can be no duty, and thus no negligent selection claim, against Klein, Time Warner, and Turner Broadcasting, where the Complaint does not allege that they had even the slightest role in selecting Elenson.  The same holds true with respect to TruTV.  While the Complaint alleges that TruTV aired the estate sale, it does not suggest that TruTV had any role in hiring Elenson.  Compl. ¶¶ 12, 22, 23, 24.  As such, the negligent selection claims against these Media Defendants will all be dismissed without prejudice, leaving only the negligent selection claim against Atlas Media.[3]  *See, e.g.*, *Glenn v. Lambdin*, 2006 WL 2620268, at *4 (M.D. Fla. Sept. 12, 2006) (Steele, J.).

As to Atlas Media, the Media Defendants argue that the allegations fail to state a claim.  They contend that Florida has adopted the elements of a negligent selection claim as set forth in section 411 of the Restatement (Second) of Torts, which imposes liability only for "physical harm" to persons or property.  *See* Media Def. Mot. at 5-6.  According to the Media Defendants, in this case such harm is missing because the Van Vechtens have not alleged "that they or any of their property involved in the estate sale sustained 'physical harm'" as a result of the alleged negligence.  *See id.* at 5.  Instead, they say, the Van Vechtens "allege only 'financial injury' arising from Elenson's alleged failure to sell as much as he promised, failure to pay [them] the 'promised 70% of total sales,' and his alleged conversion of some sale items to his warehouse.'"  *See id.*

---

[3] The Van Vechtens admit they have not alleged sufficient facts as to Klein, Time Warner, Turner Broadcasting, and TruTV, and request leave to do so.  The Court will permit them an opportunity to amend.

As an initial matter, this Court does not agree that Florida requires "physical harm" as a prerequisite to liability for negligent selection. The Florida decisions relied upon by the Media Defendants do not so hold, as even they concede. *See* Media Def. Reply at 2 ("It is true that no Florida appellate court has decided whether a claim for negligent selection of a contractor can be used as a vehicle to recover damages that do not qualify as 'physical harm.'"). In *Davies v. Commercial Metals Co.*, 46 So. 3d 71, 73 (Fla. 5th DCA 2010), the court identifies the Restatement as "[t]he basis for a negligent selection claim," but does not include a requirement of "physical harm" among the claim's elements. Instead, the court states that where an independent contractor has been hired "(a) to do work involving a risk of harm unless skillfully and carefully done, or (b) to perform any duty owed by the employer to third persons," a negligent selection claim will lie if the plaintiff alleges and proves that:

> (1) the contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury.

*See id.* at 73-74. The court does not say that persons or property must endure "physical harm," as that term is used in the Restatement. Nor does one find that requirement in *Suarez v. Gonzalez*, 820 So. 2d 342 (Fla. 4th DCA 2002), the other Florida decision cited by the Media Defendants.

Recognizing that no Florida case has explicitly required a showing of "physical harm," the Media Defendants turn to out-of-state cases. *See* Media Def. Mot. at 6 (citing *Transmedia Network, Inc. v. Countrywide Bus. Alliance*, 2002 WL 31151623, at *6-*9 (Cal. Ct. App. Sept. 27, 2002); *McDonnell v. Music Stand, Inc.*, 886 P.2d 895, 900 (Kan. Ct. App. 1994); *Gurnsey v. Conklin Co.*, 751 P.2d 151, 158 (Mont. 1998)). While those decisions show that some jurisdictions expressly impose a "physical harm" element, it does not follow that this Court should do so. This Court must apply Florida law as interpreted by Florida courts. *See Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996) ("In matters of state law, federal courts are bound by the rulings of the state's highest court. If the state's highest court has not ruled on the issue, a federal court must look to the intermediate state appellate courts.") (citation omitted). While the Media Defendants correctly argue that "a federal court attempting to forecast state law" on a matter of first impression "may consider the case law of other jurisdictions," *see Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005), the Court finds no occasion to resort to such sources where, as here, the Florida courts have said what elements are required to establish a claim and those elements do not include the one argued for by the Media Defendants. In the absence of a single

Florida case saying that a plaintiff must experience "physical harm" to his person or property in order to maintain a negligent selection claim, this Court will not impose that extra hurdle simply because other states have done so.

But even assuming "physical harm" were a prerequisite to recovery, that element clearly would be satisfied here. Elenson allegedly stole the Van Vechten's valuable jewelry and art. Compl. ¶¶ 22, 23, 25-41. The term "harm" is fairly understood to encompass not just "injury" or "detriment," but also "loss." *See* Black's Law Dictionary 722 (7th ed. 1999). When property is converted or stolen, that amounts to a "loss." *See Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 271 (11th Cir. 2009) (conversion is unauthorized act that deprives another of his property). Moreover, the Restatement notes that even a minor scratch on a car bumper would satisfy the "physical harm" requirement – total obliteration of the property is not necessary. *See* Restatement (Third) of Torts § 4 cmt. c (2010). Indeed, "no minimum amount of physical harm is required," and "there is no requirement that the detriment be major." *See id.* If even a slightly scratched car bumper satisfies the "physical harm" requirement, it would be anomalous to find that the outright taking of valuable jewelry and art, which totally deprives the owner of its use, does not. Thus, the negligent selection claim is not barred merely because Elenson allegedly stole the property at issue instead of slightly damaging it.

The Media Defendants next argue that the Complaint must be dismissed because it does not allege sufficient facts to show they had a duty to check out or investigate Elenson's appropriateness, competency, or trustworthiness. *See* Media Def. Mot. at 7-8. They argue an estate sale does not trigger any non-delegable duty or duty imposed by law, nor any general duty because Elenson was hired to conduct an estate sale, which is not inherently dangerous and did not involve "a risk of harm unless skillfully and carefully done." *See id.*

The Media Defendants misunderstand the case law. *Suarez*, cited above, does not hold that unless the activity is inherently dangerous, the hiring party owes no duty to the plaintiff in selecting an independent contractor.[4] Rather, it states that the hiring party has a duty to exercise reasonable care under the circumstances in selecting an independent contractor. *See Suarez*, 820 So. 2d at 345 ("The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances[.]") (citation omitted). Thus, there is

---

[4] Nor do the other cases relied upon by Media Defendants. *Davies* was about proximate cause, not duty, and *Stander v. Dispoz-O-Products, Inc.*, 973 So. 2d 603 (Fla. 4th DCA 2008), concerned the absence of key supporting allegations under inapposite facts.

unquestionably a duty; the only question is the amount of care required of the hiring party in fulfilling that duty – something that will vary as the circumstances vary.  *See id.*  In *Suarez*, the court identified three factors that "are important in fixing the amount of care required."  *See id.*  The first factor is whether others will be exposed to danger if the contractor's work is not done properly; the second factor is whether the nature of the work lies within the average man's competency or instead requires special training or skill; and the third factor is whether the parties bear a relationship that imposes a peculiar duty of protection.  *See id.*  These factors do not bear on *whether* the hiring party has a duty, but rather on *the extent of* that duty.

With these principles in mind, the Court finds the duty element sufficiently pled in this case. The Complaint alleges that Atlas Media hired Elenson to conduct an estate sale of art and jewelry valued at $400,000 and that Atlas Media failed to appropriately inquire into Elenson's fitness for that job prior to hiring him.  Compl. ¶¶ 13, 20, 42-48.  Carrying out an estate sale of valuable art and jewelry may require special skill or competency, and it may involve a risk of harm to such property if not carefully done.  Thus, Atlas Media had a duty to use reasonable care in view of all the circumstances in selecting Elenson.  The precise degree of care required, and whether or not such care was exercised, are factual matters not suited for determination at this stage in the proceedings.[5]

### C. Allegations Against 2MuchStuff4Me

2MuchStuff4Me moves to dismiss on the ground that the Complaint fails to allege any claims for relief against it.  *See* 2MuchStuff4Me Mot. at 2-3.  The Van Vechtens concede that while they named 2MuchStuff4Me as a Defendant, they have not in fact asserted any substantive counts against

---

[5] As to the amount of care, the Media Defendants cite a portion of *Suarez* out of context to suggest that merely because an estate sale is a "non-dangerous activity," they had no duty to inquire about Elenson's fitness.  *See* Reply at 8.  That is not the rule, however.  What the Media Defendants fail to mention is that the sophistication and experience of the hiring party must be taken into account in affixing the amount of care.  *See Suarez*, 820 S0. 2d at 845.  For an inexperienced lay person, there may be no duty to inquire into the contractor's background if the work to be done is non-dangerous.  For more sophisticated and experienced parties, a greater duty of inquiry may exist. As explained in *Suarez*:

> The Restatement's second factor for determining the amount of care required in hiring an independent contractor focuses on the "extent of the employer's knowledge and experience in the field of work to be done."  The Restatement notes that "an inexperienced widow employing a contractor to build a house is not to be expected to have the same information concerning the competence and carefulness of building contractors in the community, or to exercise the same judgment, as would a bank seeking to build the same house."

*See id.* at 345-36.  Given that the Media Defendants are large corporations, not lay people, it is conceivable that they may be held to be a greater duty of inquiry.  Ultimately, that will depend on whether they had the requisite prior knowledge and past experience in employing contractors of this kind, or other relevant knowledge or experience. Again, that is a factual question not suited for determination at this time.

it.  *See* Resp. at 1-2.  Obviously, no relief can be granted where a plaintiff does not assert any substantive causes of action against a particular defendant.  The Van Vechtens state that they actually intended to raise claims against 2MuchStuff4Me, but inadvertently failed to include them.  *See id.*  As such, they "do not oppose" dismissal, "as long as the dismissal is without prejudice so that [they] can add count(s) against this Defendant."  *See id.*  2MuchStuff4Me agrees that leave to amend is appropriate, and the Court will allow it.

## Conclusion

Accordingly, for the reasons explained above, it is hereby **ORDERED and ADJUDGED** that Elenson's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 33] is **DENIED**; the Media Defendants' Motion to Dismiss for Failure to State a Claim [ECF Nos. 8] is **GRANTED IN PART**; and 2MuchStuff4Me's Motion to Dismiss for Failure to State a Claim [ECF No. 32] is **GRANTED**.  The Van Vechtens are given leave to amend the Complaint consistent with this Order.  The Amended Complaint must be filed by **February 8, 2013**.

**DONE and ORDERED** in chambers, at Miami, Florida, on January 28, 2013.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*U.S. Magistrate Judge*
*Counsel of record*